United States Courts
Southern District of Texas
FILED
*September 30, 2016*
David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. **H 16-436** |
| **KARINA DEL CARMEN NUNEZ-ARIAS** | § § § | UNDER SEAL |

# INFORMATION

THE UNITED STATES CHARGES:

## Introduction

At all times material to this Information:

1. Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan state-owned and state-controlled oil company. PDVSA and its subsidiaries were responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government. PDVSA and its wholly-owned subsidiaries were "instrumentalities" of the Venezuelan government as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A).

2. At all relevant times, Defendant **KARINA DEL CARMEN NUNEZ ARIAS** ("Defendant **NUNEZ**"), a resident of Venezuela and later Miami-Dade County, Florida, was employed by PDVSA or by wholly-owned subsidiaries or

affiliates thereof from in or around 2010 until in or around May 2013. During that time, Defendant **NUNEZ** held a number of positions related to purchasing, including serving as a purchasing analyst for the PDVSA procurement subsidiary responsible for equipment purchases. Defendant **NUNEZ**'s job responsibilities included selecting companies for bidding panels, which allowed those companies to submit bids on individual PDVSA projects. Defendant **NUNEZ** was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

3. At all relevant times, Roberto Enrique RINCON FERNANDEZ ("RINCON") was the owner of a number of U.S.-based energy companies, including several companies based in the Southern District of Texas, that supplied equipment and services to PDVSA, and a resident of Texas, and thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

4. At all relevant times, Abraham Jose SHIERA BASTIDAS ("SHIERA") was the owner of a number of other U.S.-based energy companies that supplied equipment and services to PDVSA, and a resident of the United States, and thus a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title

15, United States Code, Section 78dd-2(h)(1). RINCON and SHIERA worked together on a number of PDVSA contracts and contract bids.

## COUNT ONE
### (18 U.S.C. § 371 – Conspiracy)

5.  Beginning in at least 2010 and continuing through at least 2013, the defendant,

**KARINA DEL CARMEN NUNEZ ARIAS**,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly conspire, confederate, and agree with others known and unknown to the United States, including RINCON and SHIERA, to commit an offense against the United States, that is:

knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, to conduct or attempt to conduct financial transactions affecting interstate and foreign commerce, which financial transactions involved the proceeds of specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15, United States Code, Sections 78dd-2 and 78dd-3, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## Purpose of the Conspiracy

6. The purpose of the conspiracy was for Defendant **NUNEZ**, RINCON SHIERA, and their co-conspirators to engage in financial transactions to conceal and disguise bribe payments paid to Defendant **NUNEZ**, all in an effort by RINCON, SHIERA, and their cohorts to secretly and illegally gain an improper advantage in obtaining and retaining lucrative energy contracts with PDVSA.

## Manner and Means of the Conspiracy

7. The manner and means by which Defendant **NUNEZ** and her co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following, while in the Southern District of Texas and elsewhere:

8. Defendant **NUNEZ**, together with others, including RINCON and SHIERA, agreed that, in exchange for Defendant **NUNEZ**'s assistance in placing RINCON's and SHIERA's companies on the bidding panels for PDVSA projects, RINCON and SHIERA would pay bribes to Defendant **NUNEZ**.

9. Defendant **NUNEZ**, together with others, including RINCON and SHIERA, attempted to conceal, and did in fact conceal, the nature, source, and ownership of the bribes by frequently having the bribes paid out of bank accounts controlled by RINCON and SHIERA that were in the name of companies other than the companies for which Defendant **NUNEZ** helped to secure PDVSA contracts.

10. Defendant **NUNEZ**, together with others, including RINCON and SHIERA, further attempted to conceal, and did in fact conceal, the nature, source, and ownership of the bribes by directing bribe payments to be sent to various recipients other than Defendant **NUNEZ**.

11. Defendant **NUNEZ**, together with others, including RINCON and SHIERA, further attempted to conceal, and did in fact conceal, the nature, source, and ownership of the bribes by having certain of the bribes paid directly to a real estate closing agent in order to purchase a residence for Defendant **NUNEZ** in Coral Gables, Florida.

12. Defendant **NUNEZ**, together with others, further attempted to conceal, and did in fact conceal, the nature, source, and ownership of the bribes by causing the residence in Coral Gables, Florida that was purchased with the proceeds of the bribery scheme to be owned in the name of a company created and controlled by Defendant **NUNEZ** and a relative, rather than in her own name.

13. Defendant **NUNEZ**, together with others, including RINCON, further attempted to conceal, and did in fact conceal, the nature, source, and ownership of the bribes by having certain of the bribes paid into an account held in the name of a relative of Defendant **NUNEZ**.

14. Defendant **NUNEZ**, together with others, including SHIERA, further attempted to conceal, and did in fact conceal, the nature, source, and ownership of

the bribes by having certain of the bribes paid into an account in the name of a company Defendant **NUNEZ** created and controlled with a relative.

## Overt Acts

15.     In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

16.     On or about August 1, 2011, RINCON caused $170,000 to be transferred from a bank account held in the name of a company owned by RINCON and based in the Southern District of Texas into a bank account held in the name of a company owned by two of RINCON's relatives.

17.     On or about August 1, 2011, RINCON caused $170,000 to be transferred from the bank account held in the name of the company owned by his relatives referenced in Paragraph 16 above to a bank account in Panama held in the name of a relative of Defendant **NUNEZ**, in exchange for Defendant **NUNEZ**'s assistance placing RINCON's companies on PDVSA bidding panels.

18.     On or about May 8, 2012, SHIERA caused $150,000 to be transferred from a bank account in the name of a company owned by SHIERA to a real estate closing agent to serve as the buyer's deposit on a residence for Defendant **NUNEZ**

in Coral Gables, Florida, in exchange for Defendant **NUNEZ**'s assistance placing RINCON's and SHIERA's companies on PDVSA bidding panels.

19. On or about May 31, 2012, RINCON caused $1,000,000 to be transferred from a bank account in the name of a company owned by RINCON and based in the Southern District of Texas to the real estate closing agent referenced in Paragraph 18 above to partially pay the purchase price for a residence for Defendant **NUNEZ** in Coral Gables, Florida, in exchange for Defendant **NUNEZ**'s assistance placing RINCON's and SHIERA's companies on PDVSA bidding panels.

20. On or about June 5, 2012, SHIERA caused $50,576.99 to be transferred from a bank account in the name of a company owned by SHIERA to the real estate closing agent referenced in Paragraph 18 above to partially pay the purchase price for a residence for Defendant **NUNEZ** in Coral Gables, Florida, in exchange for Defendant **NUNEZ**'s assistance placing RINCON's and SHIERA's companies on PDVSA bidding panels.

21. On or about June 8, 2012, Defendant **NUNEZ** formed a Florida limited liability company which was managed by Defendant **NUNEZ** and a relative and which was listed as the official buyer of the residence in Coral Gables, Florida referenced in Paragraphs 18, 19, and 20 above.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE
(18 U.S.C. § 982(a)(1))

22. Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to **KARINA DEL CARMEN NUNEZ ARIAS** that in the event of her conviction of the offense charged in Count 1 of the Information, the United States intends to seek forfeiture of all property, real or personal, involved in money laundering offenses or traceable to such property.

### Property Subject to Forfeiture

23. Defendant is notified that the property subject to forfeiture includes, but is not limited to, the following property (or its net sales proceeds):

The real property, improvements, and appurtenances located at 1441 Bella Vista Avenue, Coral Gables, Florida 33134, and legally described as:

Lot 1, Block 8, CORAL BAY, SECTION "C," according to the Plat thereof, as recorded at Plat Book 65, Page 147, of the Public Records of Miami-Dade County, Florida.

### Money Judgment

24. Defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of all property subject to forfeiture.

## Substitute Assets

25. Defendant is notified that in the event that property subject to forfeiture, as a result of any act or omission of Defendant or her co-conspirators,

   a. Cannot be located upon the exercise of due diligence;

   b. Has been transferred or sold to, or deposited with, a third person;

   c. Has been placed beyond the jurisdiction of the Court;

   d. Has been substantially diminished in value; or

   e. Has been commingled with other property which cannot be subdivided without difficulty;

the United States will seek to forfeit any other property of Defendant up to the total value of the property subject to forfeiture pursuant to Title 21, United States Code, Section 853(p), as incorporated by reference in Title 18, United States Code, Section 982(b)(1).

KENNETH MAGIDSON
UNITED STATES ATTORNEY

ANDREW WEISSMANN
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

BY: _____
JOHN P. PEARSON
DEPUTY CHIEF
ROBERT S. JOHNSON
ASSISTANT UNITED STATES
ATTORNEY

BY: _____
AISLING O'SHEA
JEREMY R. SANDERS
TRIAL ATTORNEYS